IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MATTISON ASHER,**<br>**Plaintiff,**<br><br>**v.**<br><br>**0XBOW LTD., ZAK COLE, DREW OSUMI, PATRICK MCGOWAN, AND DOES 1-10, INCLUSIVE,**<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:25-cv-01057**<br>**Judge Richardson/Frensley** |

**ORDER**

**I. INTRODUCTION**

Plaintiff Mattison Asher ("Asher") filed a complaint alleging breach of contract and unjust enrichment against Defendants 0xbow Ltd. ("0xbow"), Zak Cole ("Cole"), Drew Osumi, Patrick McGowan, and DOES 1-10. Docket No. 1. Defendants Cole and 0xbow, hereinafter "Counter-Plaintiffs," brought a counterclaim for defamation against Asher, hereinafter "Counter-Defendant." Docket No. 18. Counter-Defendant answered the Counterclaim and asserted seventeen affirmative defenses. Docket No. 24.

This matter is now before the Court upon "Defendants' [Counter-Plaintiffs'] Motion to Strike Plaintiff's [Counter-Defendant's] Affirmative Defense Nos. 4-5, 8, 10-12, 14, and 17." Docket No. 31. Counter-Plaintiffs have also filed a Supporting Memorandum and a Proposed Order. Docket Nos. 31-1, 31-2. Counter-Defendant has filed a Response in Opposition, and Counter-Plaintiffs have filed a Reply. Docket Nos. 39, 44. For the reasons set forth below, Counter-Plaintiffs' Motion (Docket No. 31) is **DENIED**.

## II. LAW AND ANALYSIS

### A. Motions to Strike Affirmative Defenses

Motions to Strike are governed by Rule 12, which states:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

"Motions to strike are disfavored and should be granted only when the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Mawdsley v. Kirkland's, Inc.*, No. 3-13-0462, 2013 U.S. Dist. LEXIS 152262, 2013 WL 5754947, at *1 (M.D. Tenn. Oct. 23, 2013) (citating *Equal Employment Opportunity Comm'n v. FPM Group, Ltd.*, 657 F. Supp.2d 957, 966 (E.D. Tenn 2009)).

This Court has stated that in the Sixth Circuit, the Rule 8 pleading standards do not apply to affirmative defenses. *McLemore v. Regions Bank*, No. 3:08-cv-1003, 2010 U.S. Dist. LEXIS 25785, 2010 WL 1010092, at *13 (M.D. Tenn. 18, 2010), *citing Pollock v. Marshall*, 845 F.2d 656, 657 (6th Cir. 1988). Nevertheless, an affirmative defense still must provide "fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006), quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1274 (internal quotation marks omitted). A defense is insufficient if, as a matter of law, it cannot succeed under any circumstances or has "no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201

F.2d 819, 822 (6th Cir. 1953).

### B. Counter-Plaintiffs' Motion to Strike

Counter-Plaintiffs move the Court to strike Counter-Defendant's Fourth, Fifth, Eighth, Tenth, Eleventh, Twelfth, Fourteenth, and Seventeenth Affirmative Defenses. Docket No. 31-1, p. 4. Those Affirmative Defenses are as follows:

> **Fourth Affirmative Defense:** (Qualified Privilege) Any allegedly defamatory statements made by Counter-Defendant of and concerning Counter-Plaintiffs were qualifiedly privileged.
>
> **Fifth Affirmative Defense:** (Absolute Privilege) Any allegedly defamatory statements made by Counter-Defendant of and concerning Counter-Plaintiffs were absolutely privileged.
>
> **Eighth Affirmative Defense:** (Unclean Hands) The Counterclaim, and each purported cause of action therein, is barred by the doctrine of unclean hands.
>
> **Tenth Affirmative Defense:** (Laches) The Counterclaim, and each purported cause of action therein, is barred by the doctrine of laches.
>
> **Eleventh Affirmative Defense:** (Estoppel) Counter-Plaintiffs, by their words and conduct, have waived the claims in the Counterclaim, and each cause of action stated therein.
>
> **Twelfth Affirmative Defense:** (Waiver) Counter-Plaintiffs, by their words and conduct, have waived the claims in the Counterclaim, and each cause of action stated therein.
>
> **Fourteenth Affirmative Defense:** (Mistake) The Counterclaim, and each purported cause of action therein, is barred by mistake.
>
> **Seventeenth Affirmative Defense:** (Reservation of Rights) Defendant lacks sufficient knowledge or information upon which to form a belief as to whether there are additional, as yet unstated, affirmative defenses available, and Defendant thus reserves the right to assert such additional affirmative defenses if they are discovered and deemed proper.

Docket No. 24, p. 4-7 (reformatted).

#### 1. Counter-Defendant's Fourth and Fifth Affirmative Defenses: Qualified and Absolute Privilege

Counter-Plaintiffs contend that the privilege defenses are asserted as bare legal conclusions, without any factual allegations explaining their basis or application, leaving Counter-Plaintiffs to speculate about each defense. Docket No. 31-1, p. 7. Counter-Plaintiff argues:

> Both of Asher's affirmative defenses invoking privilege are presented as a single conclusory sentence that fails to identify even the privilege relied on, much less the statements allegedly covered or the factual circumstances giving rise to the purported privilege.
>
> …
>
> Here, Asher does not identify whether he asserts a qualified common-law privilege, a constitutional privilege, a competition-based privilege, or some other doctrine entirely. Nor does he identify the allegedly privileged statements, the context in which they were made, or how the asserted privilege applies to Counter-Plaintiffs' defamation claim. As pleaded, the privilege defenses leave Counter-Plaintiffs to guess at both the legal theory and the conduct at issue.

*Id.* at 8.

Counter-Defendant responds that "Counter-Plaintiffs' Counterclaim identifies the allegedly defamatory publication: Asher's article titled 'Choices,' published on Medium.com." Docket No. 39, p. 3. Regarding Affirmative Defense Four: Qualified Privilege, Counter-Defendant asserts that Tennessee law recognizes a qualified privilege for good-faith communications on matters of public interest and that the article's factual assertions were drawn almost entirely from publicly available sources. *Id.* at 3-4. Counter-Defendant further contends that the article addressed the business practices, regulatory compliance, and public representations of a cryptocurrency company that is a subject of substantial public interest because it markets itself as a compliance-oriented privacy protocol. *Id.* at 3. Additionally, Counter-Defendant maintains that "[t]he article's pervasive reliance on verifiable public sources, its cautionary language, and its express disclaimers of legal and technical expertise are the opposite of actual malice—they reflect a good-faith effort to present documented facts and distinguish them from analysis and open questions." *Id.* at 5-6. Regarding Affirmative Defense Five: Absolute Privilege/Fair Report Privilege, Counter-

Defendant asserts that the fair report privilege protects reporting on official proceedings, public records, and publicly available regulatory filings. *Id.* at 6. Counter-Defendant maintains that Tennessee courts have held that this privilege is absolute and cannot be overcome by a showing of malice. *Id.*

Counter-Plaintiffs' reply asserts that Counter-Defendant's Response includes factual and legal arguments not included in the Answer, and fails to address Counter-Plaintiffs' argument as to the insufficiency of Counter-Defendant's pleading. Docket No. 44, p. 2. Counter-Plaintiff asserts that the proper vehicle to add factual detail or clarify a defense is through an amended pleading, not an argument in a response brief. *Id.*

The Court finds that the Fourth and Fifth Affirmative Defenses provide fair notice and will not be stricken. Counter-Plaintiffs' contention that they would be left to speculate on the defenses is not convincing. In *Lawrence*, the Sixth Circuit affirmed a finding that an affirmative defense stating that the defendants were "entitled to qualified immunity for all activities complained of in this complaint" provided sufficient fair notice. 182 F. App'x at 446. Following this reasoning, the affirmative defenses stating "any allegedly defamatory statements made by Counter-Defendant of and concerning Counter-Plaintiffs were qualifiedly [and absolutely] privileged" likewise provide fair notice. Docket No. 24, p. 4-5. Therefore, the Court will not strike Counter-Defendant's Fourth and Fifth Affirmative Defenses.

### 2. Counter-Defendant's Eighth, Tenth, Eleventh, and Twelfth Affirmative Defenses: Unclean Hands, Laches, Estoppel, and Waiver

Counter-Plaintiffs maintain that these equitable defenses were pleaded as formulaic conclusions, devoid of the factual or legal basis required to put Counter-Plaintiffs on fair notice. Docket No. 31-1, p. 6. Counter-Plaintiffs argue:

> First, with respect to unclean hands, Asher does not allege any

> specific inequitable conduct by Counter-Plaintiffs, identify when such conduct occurred, or explain how it relates to the defamation claim. Asher's bare reference to the unclean-hands doctrine, without any factual content, leaves Counter-Plaintiffs to guess at the conduct allegedly barring relief and fails to provide fair notice.
>
> Second, Asher pleads laches without alleging any delay, much less unreasonable delay, attributable to Counter-Plaintiffs, and without alleging any resulting prejudice. District courts in the Sixth Circuit have stricken similarly deficient equitable defenses. For example, in *Martin v. Trott Law, P.C.*, the court struck a laches defense where the defendant "made no effort to establish either that the plaintiffs indulged in 'inexcusable delay' in filing their complaint, or that he was in any way 'prejudiced' by any such supposed delay." 265 F. Supp. 3d 731, 742 (E.D. Mich. 2017). As in *Martin*, Asher offers no facts to support the essential elements of laches—this is insufficient to provide fair notice.
>
> Third, Asher's estoppel defense does not identify any statement or conduct by Counter-Plaintiffs, any reliance by Asher, or any resulting detriment. Where estoppel defenses are pleaded without facts identifying these elements, they should be stricken, as bare recitations fail to apprise the opposing party of the basis of the defense. *See Martin*, 265 F. Supp. 3d at 737 (striking estoppel defense where the "boilerplate recitation" failed to provide notice of any "readily conceivable set of facts on which [plaintiff] could prevail" on estoppel defense).
>
> Fourth, Asher's waiver defense does not allege what right was allegedly waived, what conduct constituted waiver, or when any waiver occurred. Without identifying a knowing and intentional relinquishment of a specific right, the waiver defense also fails to provide fair notice.

*Id.* at 6-7

Counter-Defendant responds that the defenses do not exist in a vacuum and are part of an Answer that responds to a Counterclaim, which arises from the same underlying dispute described in the Complaint. Docket No. 39, p. 8. Counter-Defendant further asserts that the factual basis for each defense is "drawn from the course of dealing between the parties" as reflected in the pleadings. *Id.* Counter-Defendant provides specific factual details related to each challenged defense. *Id.* at 8-10. Counter-Defendant distinguishes this case from *Martin* because "every

challenged defense arises from the same core facts." *Id.* at 10, citing 265 F. Supp. 3d at 742. Counter-Defendant ultimately contends that the connection between the equitable defenses and the Counterclaim is "apparent from the face of the pleadings." *Id.*

Counter-Plaintiffs reply that none of the arguments raised in the Response engage with the pleading deficiencies identified in the Motion. Docket No. 44, p. 3. Counter-Plaintiffs further reply that factual allegations introduced in an opposition are not part of the pleadings and have no bearing on whether affirmative defenses provide fair notice. *Id.*

The Court finds that the Eighth, Tenth, Eleventh, and Twelfth Affirmative Defenses provide fair notice. As the Sixth Circuit has held, "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient." *Lawrence*, 182 F. App'x at 456, *quoting* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1274. Under this standard, an affirmative defense that the defendants were "entitled to qualified immunity for all activities complained of in this complaint" was found to be sufficient. *Id.* Similarly, the Sixth Circuit has upheld an affirmative defense stating, "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose." *Montgomery v. Wyeth,* 580 F.3d 455, 467 (6th Cir. 2009). Therefore, although the defenses are brief, they are sufficient to provide fair notice, and the Court will not strike Counter-Defendant's Eighth, Tenth, Eleventh, or Twelfth Affirmative Defenses.

**3. Counter-Defendant's Fourteenth Affirmative Defense: Mistake**

Counter-Plaintiffs assert that the mistake defense is a formulaic conclusion and does not provide fair notice. Docket No. 31-1, p. 6-7. Counter-Plaintiff argues:

> Asher's mistake defense does not identify the nature of the alleged mistake, whether it was unilateral or mutual, who made the mistake, or how any mistake could bar a defamation claim premised on international publication of false statements. Pleaded in this manner,

> the defense provides no notice of its factual or legal basis. Rule 9(b) of the Federal Rules of Civil Procedure provides explicitly that in "in [*sic*] alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Asher's mistake defense fails to provide fair notice and does not comply with Rule 9(b).

*Id.* at 7.

Counter-Defendant responds that Counter-Plaintiffs' contention that mistake is incompatible with a defamation claim "premised on intentional publication of false statements assumes the truth of [Counter-Plaintiffs'] own allegations." Docket No. 39, p. 10. Counter-Defendant argues:

> The "Choices" article was based largely on publicly available sources. To the extent any statement in the article is alleged to be inaccurate, the defense of mistake preserves [Counter-Defendant's] right to show that any such inaccuracy was a good-faith error derived from public sources, not an intentional falsehood. This is particularly relevant because the article expressly disclaimed legal expertise ("Mattison Asher is not a lawyer") and technical certainty ("Mattison Asher is not a developer"; "I say potentially because it's under a test section of the code"). Counter-Plaintiffs also invoke Rule 9(b), but that rule requires particularity from a party "alleging fraud or mistake" as a basis for a claim—not from a party asserting mistake as an affirmative defense to negate intent. Counter-Plaintiff's argument for striking this defense is an argument on the merits dressed up as a pleading challenge.

*Id.*

Counter-Plaintiffs' reply generally states that the Response fails to address the pleading deficiencies identified in the Memorandum in Support of Motion to Strike (Docket No. 31-1). Docket No. 44, p. 3.

In relevant part, Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As set forth above, Counter-Defendant's Fourteenth Affirmative Defense states that "[t]he Counterclaim, and each purported cause of action therein, is barred by mistake." Docket No. 24, p. 6. The Court finds

that this Defense is an allegation of mistake such that it must meet the pleading requirements of Rule 9(b). *See Fed. Deposit Ins. Corp. v. Thornton*, No. 3:12-CV-00218, 2013 U.S. Dist. LEXIS 207444, 2013 WL 12342220, at *2 (M.D. Tenn. Dec. 9, 2013) (striking the affirmative defense of mistake because defendants failed to plead it with the particularity required by Rule 9(b)). Counter-Defendant has requested leave to amend its Answer if the Court finds any challenged defenses insufficiently pleaded. Docket No. 39, p. 11. Because the trial is not set until July 2027 and motions to strike are heavily disfavored, the Court will permit Counter-Defendant to amend only the Fourteenth Affirmative Defense of mistake under Rule 15(a)(2). *Id.*

#### 4. Counter-Defendant's Seventeenth Affirmative Defense: Reservation of Rights

Counter-Plaintiffs contend that the final defense does not state an affirmative defense and fails to provide notice of a ground on which Counter-Defendant seeks to avoid or limit liability. Docket No. 31-1, p. 9. Counter-Plaintiff argues:

> This assertion is not an affirmative defense. It does not respond to the Counterclaim and does not provide Counter-Plaintiffs with notice of any defense on which Asher [Counter-Defendant] intends to rely. Rule 8(c) requires a party to affirmatively state its defenses. Fed. R. Civ. P. 8(c). A generalized reservation of the right to assert unidentified defenses at some later time does not satisfy that requirement. As with Asher's other bare-bones defenses, this assertion leaves Counter-Plaintiffs to guess what defenses may later be raised. Moreover, the Federal Rules already govern amendment of pleadings, and a party may not preserve unknown defenses through a nonresponsive placeholder in an answer.

*Id.*

Counter-Defendant responds that since no discovery has occurred in the case, the Seventeenth Affirmative Defense reserves the right to assert additional defenses as the factual record develops. Docket No. 39, p. 11. Counter-Defendant cites generally to an out-of-Circuit case for the proposition that courts permit such reservations at the outset of litigation. *Id.* Counter-

Defendant asserts that Counter-Plaintiffs did not identify any prejudice, so striking the defense would "accomplish nothing" and would only "deprive [Counter-Defendant] of the ability to assert defenses that may only become apparent through discovery." *Id.*

Counter-Plaintiffs reply that prejudice would result if they were forced to incur unnecessary expenses and burdens by conducting discovery into vague defenses. Docket No. 44, p. 3-4. Counter-Plaintiffs maintain that striking these defenses at the pleading stage will streamline discovery and clarify issues in dispute. *Id.* at 4.

Since motions to strike are extremely disfavored and Counter-Defendant will retain the ability to move to amend its Answer only if appropriate under Rule 15 (and potentially Rule 16), the Court will not strike the Seventeenth Affirmative Defense. *See, e.g., Sony/ATV Music Pub. LLC v. D.J. Miller Music Distributors, Inc.*, No. 3:09-CV-01098, 2011 U.S. Dist. LEXIS 116158, 2011 WL 4729807, at *5 (M.D. Tenn. Oct. 7, 2011) (denying a motion to strike a reservation of right to add affirmative defenses "[b]ecause Defendant retains the right to amend its Answer under Rule 15(a), and because district courts have that a reservation of right via an affirmative defense is appropriate"); *Willis v. Phillips*, No. 1:18-CV-142, 2018 U.S. Dist. LEXIS 193677, 2018 WL 5983562, at *3 (E.D. Tenn. Nov. 14, 2018) (denying a motion to strike a reservation of right to assert additional defenses because Defendant is "constrained by the limits of Rule 15, and the Court's scheduling order").

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Docket No. 31) is **DENIED**. Counter-Defendant's Fourth, Fifth, Eighth, Tenth, Eleventh, Twelfth, and Seventeenth Affirmative Defenses may proceed. No later than **July 30, 2026**, Counter-Defendant may amend its Answer **only** to amend the Fourteenth Affirmative Defense of mistake.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**